```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
VALERIE PRITCHETT

                            Plaintiff,              07-CV-6588T

              v.                                    DECISION
                                                    and ORDER
MICHAEL ASTRUE,
Commissioner of Social Security

                            Defendant.
_____
```

## INTRODUCTION

Plaintiff, Valerie Pritchett ("Plaintiff"), brings this action pursuant to sections 216(i) and 223 (d) of the Social Security Act, claiming that the Commissioner of Social Security ("Commissioner") improperly denied her application for a period of disability and disability insurance benefits ("DIB"). The Plaintiff specifically alleges that the decision of the Administrative Law Judge, James E. Dombeck ("ALJ"), that the Plaintiff was not disabled within the meaning of the Social Security Act, was not supported by substantial evidence in the record, and was contrary to the applicable legal standards.

The Commissioner moves for judgement on the pleadings pursuant to Fed. R. Civ. P. 12 (c) ("Rule 12 (c)") on the grounds that the ALJ's decision was supported by substantial evidence in the record. The Plaintiff cross-moves for judgment on the pleadings on the grounds that the ALJ's decision was erroneous. This Court finds that the decision of the Commissioner, that the Plaintiff was not disabled within the meaning of the Social Security Act, is

supported by substantial evidence in the record and is in accordance with the applicable legal standards. Therefore, for the reasons set forth below, the Commissioner's motion for judgment on the pleadings is granted, and the Plaintiff's motion is denied.

## BACKGROUND

The Plaintiff, a former Certified Nurses Aide ("CNA"), filed an application for DIB on August 26, 2004, claiming a disability due to carpal tunnel syndrome, wrist, elbow, shoulder, knee, and neck pain. (Transcript of Administrative Proceedings at 64-5, 74) (hereinafter "Tr."). The application was initially denied on November 16, 2004. (Tr. at 36). Plaintiff filed a timely request for a hearing on December 17, 2004. (Tr. at 42).

Plaintiff appeared, with counsel, and testified at the hearing on December 5, 2006 in Rochester, New York, before ALJ, James E. Dombeck. (Tr. at 397-423). In a decision dated January 19, 2007, the ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. at 14-25). The Appeals Council denied further review, and the ALJ's decision became the final decision of the Commissioner on September 21, 2007. (Tr. at 6-9). The Plaintiff then filed this action on November 21, 2007.

## DISCUSSION

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405 (g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. When considering such claims, this section directs the Court to accept

the findings of fact made by the Commissioner, provided that these findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. V. NLRB, 305 U.S. 197, 217 (1938). Section 405 (g) limits the Court's scope of review to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards. See Monger v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1982) (finding that a reviewing Court does not try a benefits case *de novo*). The Court must, however, review the entire record to determine whether the Commissioner's decision was reasonable. Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983)(citation omitted).

The Commissioner moves for judgment on the pleadings pursuant to Rule 12 (c), asserting that his decision was reasonable and was supported by substantial evidence in the record. Rule 12 (c) permits judgment on the pleadings where the material facts are undisputed and where judgement on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If the court is convinced, after reviewing the pleadings, that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). After reviewing the entire record, this Court finds that the Commissioner's decision is

supported by substantial evidence in the record. Therefore, the Commissioner's motion for judgment on the pleadings is granted, and the Plaintiff's motion is denied.

## II. **The Commissioner's Decision to deny the Plaintiff benefits was supported by substantial evidence in the record.**

The ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act. In reaching his decision, the ALJ followed the required five-step sequential analysis for evaluating Social Security disability benefits claims. The five-step analysis considers:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities;

(3) if the claimant has a severe impairment, whether the impairment meets of medically equals an impairment listed in Appendix 1, Subpart P, Regulation No. 4, if so, the claimant is considered disabled;

(4) if not, whether the claimant has the residual functional capacity to perform any past relevant work;

(5) if not, whether, considering the claimant's age, education, work experience, and residual functional capacity, the claimant could perform other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

Here, the ALJ found that (1) the Plaintiff has not engaged in substantial gainful activity since May 15, 2002; (2) the Plaintiff has the severe impairments: osteoarthritis and a history of bilateral carpal tunnel syndrome, status post left carpal tunnel release; (3) the Plaintiff does not have a combination of

impairments that meets or medically equals the impairments listed in Appendix 1; (4) the Plaintiff does not have the residual functional capacity to perform any past relevant work; and (5) the Plaintiff, a younger individual with limited education, has the residual functional capacity to perform sedentary work of which there were significant jobs in the national economy. (Tr. at 19-25). Therefore, the ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act. Id. Based on the entire record, including the medical evidence, this Court finds that there was substantial evidence in the record to support the ALJ's decision.

    **A.**    **The ALJ's Decision is supported by the medical evidence in the record, including the evidence from Plaintiff's treating physicians.**

Plaintiff argues that the ALJ did not give the proper weight to the opinion of her primary care physician, Dr. Louise Bennett. (Plaintiff's Brief at 3). Generally, if a treating physician's opinion is well-supported by medical evidence and is not inconsistent with other substantial evidence in the record, it is given controlling weight. 20 C.F.R. §416.927(d)(2), §416.1527(d)(2). The following factors must be considered when determining the weight given to a physician's medical opinion: (1) was there a treatment relationship; (2) what was the length, and frequency of the treatment relationship; (3) is the treating physician's opinion supported by clinical and laboratory findings; (4) is the treating physician's opinion consistent with the record as a whole;

(5) is the treating physician specialized; and (6) other factors that support or contradict the medical opinion of the treating physician. See 20 C.F.R. §416.927 (d)(3)-(6), §416.1527(d)(3)-(6). While the ALJ must adopt the treating physician's opinion if it is "well supported by medical findings and not inconsistent with other substantial findings," the decision of whether or not the Plaintiff is disabled is reserved to the Commissioner. Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1998); 20 C.F.R. §416.927(e), §416.1527(e).

Here, the ALJ found that the reports of Plaintiff's primary care physician, Dr. Bennett, were "contradicted by objective evidence and specialist reports and evaluations". (Tr. at 20). Therefore, the ALJ found that the opinion of Dr. Bennett should not be given controlling weight under the treating physician rule. Id. The ALJ, however, did consider Dr. Bennett's treatment reports, and the reports of Plaintiff's other treating physicians, Dr. Jeffrey Fink and Dr. Galaa Aghan, as well the reports of examining and consulting physicians. (See Tr. at 20-23).  This court finds that the ALJ properly evaluated the opinions of Plaintiff's treating physicians, including Dr. Bennett, as well as the opinions of examining and consultive physicians, in compliance with the Social Security Regulations. See 20 C.F.R. §416.927 (d), §416.1527(d); SSR 96-2p, 96-5p.

Dr. Louise Bennett, Plaintiff's primary care physician, treated the Plaintiff since May 2002. (Tr. at 406). Dr. Bennett's treatment notes report that the Plaintiff was totally or partially

disabled from work since May 18, 2002, through the date of her last treatment note on October 2, 2006. (Tr. at 223-240, 276, 282, 354-374). Dr. Bennett reported on October 17, 2002 that an EMG taken at Strong Memorial hospital showed evidence of a median neuropathy at the wrist bilaterally, mild to moderate on the rights side, mild on the left side, with no evidence of radiculopathy or ulnar neuropathy. (Tr. at 229-231). X-rays taken on September 17, 2002 were normal with no radiographic evidence of rheumatoid arthritis. (Tr. at 119-120). On November 14, 2002, Dr. Bennett reported that Plaintiff had bilateral Tinel's and Phalen's signs at the wrist and positive Finkelstein signs bilaterally. (Tr. at 228). Additionally, Plaintiff could not wear a wrist brace due to a cyst on her right wrist. Id. Plaintiff was diagnosed with Bilateral Carpal Tunnel, Bilateral de Quervain tendinitis, a left writ volar cyst, and overuse syndrome of the left upper extremity. Id. Dr. Bennett stated that the Plaintiff was to continue to work with 10 pound weight lifting restrictions, until she could be evaluated by a hand surgeon. Id.

In 2003, Dr. Bennett reported continued positive Tinel and Phalen signs bilaterally, as well as swelling and stiffness of her wrists and upper extremities. (Tr. at 225). Dr. Bennett suggested physical therapy and that the Plaintiff continue taking Celebrex. (Tr. at 225-227). Plaintiff was also referred to a hand surgeon, and a rheumatologist. (Tr. at 225-226).

Plaintiff saw Dr. Jeffrey Fink, a hand surgeon at Strong Memorial hospital, on March 14, 2003. (Tr. at 133). At the examination, Plaintiff had full range of motion in both hands and wrists, no areas of point tenderness on wrists, and no pain with full pronation and ulnar deviation of wrists. Id. Dr. Fink reported positive Phalen's and Tinel's signs bilaterally, but inconsistent two point discrimination testing in all fingers. Id. X-rays showed mild ulnar positive variance bilaterally . Id. He diagnosed Plaintiff with bilateral carpal tunnel, right greater than left. (Tr. at 134). Dr. Fink assessed that her reported symptoms were out of proportion to the medical tests and suggested she undergo Semmes-Weinstein testing before making any treatment decisions. Id.

Dr. Fink saw Plaintiff again on March 31, 2003, after Semmes-Weinstein testing was completed. (Tr. at 132). She showed significant sensory deficits in both hands, however, two point discrimination testing was inconsistent, and Dr. Fink noted that prior nerve conduction studies, revealing carpal tunnel syndrome, were inconsistent with his current testing. Id. He offered her a steroid injection, which she refused, but did not recommend carpal tunnel release surgery. Id. Dr. Fink opined that the Plaintiff was not disabled. Id.

Plaintiff returned to Dr. Bennett on April 14, 2003, unsatisfied with Dr. Fink's prognosis, and asked for a second referral. (Tr. at 225). Dr. Bennett noted that the Plaintiff was

in no acute distress, but seemed depressed. Id. She stated that surgery would not be helpful at this point. Id.

Plaintiff then saw Dr. Galaa Aghan, a hand surgeon, on June 9, 2003. Dr. Aghan recommended carpal tunnel release surgery after an initial examination of the Plaintiff revealed positive Tinel's and Phalen's signs bilaterally, atrophy of the thenar muscle, and history of numbness around the distribution of the median nerve. (Tr. at 219). Plaintiff continued to see Dr. Aghan, but requested that comments on her disability and work status be left to Dr. Bennett. (Tr. at 218).

On October 22, 2003, Dr. Aghan performed carpal tunnel release surgery. (Tr. at 212). Plaintiff had a post-surgery follow up examination on October 27, 2003, and Dr. Aghan stated she was not able to work until her next evaluation in November. (Tr. at 209). On November 10, 2003 Dr. Aghan reported the plaintiff had good range of motion in all directions with no pain and there was marked improvement and sensibility along the distribution of the media nerve. (Tr. at 208). He prescribed hydro-physical home therapy, Thera gloves and a brace, and stated she was unable to work at that time. Id. Dr. Aghan saw the Plaintiff again on November 17, 2003 and reported that she had excellent range of motion and marked improvement in sensibility. (Tr. at 207). He suggested she continue physical therapy, but stated that she could return to work on December 1, 2003 with 10 pound weight lifting restrictions for four weeks. Id.

Following surgery, Plaintiff return to her primary care physician, Dr. Bennett, who gave the Plaintiff an extended work excuse until January 2004 because she could not work as a CNA while recovering from surgery and completing physical therapy. (Tr. at 224). Dr. Bennett reported that Plaintiff had good range of motion and normal sensation. Id. In January, Dr. Bennett reported that Plaintiff was no longer wearing her brace. (Tr. at 223). At that time, she gave the Plaintiff work restrictions of lifting no more than 10 pounds, no repetitive use of hands, and no reaching above the shoulders. Id. She could sit, stand, and walk without limitations, but would have to be retrained for work other than as a CNA. Id.

On May 3, 2004, Dr. Bennett reported that Plaintiff's surgery had failed and she has stopped physical therapy and did not wear her brace. (Tr. at 279). However, she opined that Plaintiff could work with restrictions and referred her to VESID for a vocational evaluation. Id.

In August 2004, Plaintiff related to Dr. Bennett that VESID could not find her a job. (Tr. At 277). Reports from VESID reveal that the Plaintiff's case was closed because the Plaintiff was no longer interested in vocational rehabilitation services. (Tr. at 284).

Plaintiff underwent repeat nerve conduction tests in April, 2005, which revealed evidence of moderate right median neuropathy, but normal left median sensory and motor responses, and normal

right and left ulnar and motor sensory responses. (Tr. at 345-7). In October 2005, Dr. Bennett stated that the plaintiff had positive Tinel's and Finkelstein's signs bilaterally.  Plaintiff was not wearing her braces due to cysts on her wrists, making it "difficult to control her symptoms." (Tr. at 362-3).  Dr. Bennett's reports through May 2006 indicate that Plaintiff continued to have positive Tinel's and Finkelstein's signs, but that Dr. Bennett opined she could work with restrictions and job retraining. (Tr. at 357-362).

On June 16, 2006, Dr. Bennett completed a residual functional capacity assessment which limited plaintiff to lifting 10 pounds, standing and walking 6 hours in an 8 hour work day and limited pushing, pulling, reaching and handling, but unlimited in fingering and feeling. (Tr. at 350-353).  On October 24, 2006, Timothy Germain, a VESID counselor, stated that the Plaintiff could not see herself engaging in work activities, and that she reported significant physical limitations. (Tr. at 376).  Without further evaluation or testing, he accepted her reports and closed her cased without recommendation for job retraining. Id.

The Plaintiff was also examined by several consulting physicians. Dr. Linda Karbonit examined the Plaintiff on June 11, 2002. (Tr. at 117).  Dr. Karbonit reported that the Plaintiff had swelling in both hands and pain with movement of her thumbs and wrists. (Tr. at 118).  Her grip was weak, but Tinel's signs were questionable and her upper arm pain was vague. Id. She assessed

that pain was due to swelling in her fingers rather than carpal tunnel, and suggested evaluation by a rheumatologist. Id.

Dr. Richard DellaPorta saw the Plaintiff on July 9, 2003. (Tr. at 135-7). He reported that the Plaintiff complained of numbness and discomfort in her wrists and fingers, but denied other symptoms, and used a wrist splint intermittently. (Tr. at 136). The Plaintiff had full motion of the fingers and full bilateral wrist extension and rotation. Id. He reported that on initial testing, right wrist flexion was 25 degrees, but testing one minute later revealed it was 45 degrees. Id. Left wrist flexion was 55 degrees. Id. Dr. DellaPorta also opined that inflamation was the underlying problem, and recommended that she see a rheumatologist. Id.

Plaintiff also saw Dr. John Devanny on November 16, 2006 who stated that a rheumatologic examination by Dr. Darren Tabechian on February 28, 2005 revealed no evidence of inflammatory arthritis and she had a negative rheumatoid factor. (Tr. at 377-8). The record contains only the first page of Dr. Tabechian's report which outlines the history of her condition and states that her symptoms were "unabated from the condition". (Tr. at 343). While the ALJ should have requested the complete report from Dr. Tabechian, further findings are not necessary to assure the proper disposition of the claim, as the Plaintiff only saw Dr. Tabechian once, and the tests he performed did not reveal significant abnormalities

according to Plaintiff's other physicians. See Rosa v. Callahan 168 F. 3d 72, 82-3 (2d Cir. 1999); (Tr. at 378, 368).

Notwithstanding this error, this court finds that there was substantial medical evidence in the record for the ALJ to conclude that the Plaintiff was not disabled within the meaning of the Social Security Act, and that the Plaintiff could perform sedentary work. Sedentary work is defined as work that involves sitting, with occasional standing or walking, lifting no more than 10 pounds at a time, and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §404.1567(a). Plaintiff's hand surgeon assessed that she could return to work in December 2003 with 10 pound weight lifting restrictions for only 4 weeks, and Plaintiff's primary care physician assessed in 2004 that she was capable of work with 10 pound weight lifting restrictions. The consulting physicians also opined that she could work. The conclusion that Plaintiff was capable of sedentary work, was thus supported by substantial medical evidence in the record, including the evidence of plaintiff's treating physician's.

Plaintiff finally claims the ALJ erred by failing to employ a Vocational Expert. However, as there was substantial evidence in the record for the ALJ to find that the Plaintiff was not disabled within the meaning of the Social Security Act, and could perform sedentary work, it was not necessary for the ALJ to employ a Vocational Expert to determine whether there were significant jobs

in the national economy that the Plaintiff could perform.  <u>Decker v. Harris</u>, 647 F.2d 291, 298 (2d Cir. 1981).

### B. **The ALJ properly concluded that Plaintiff's testimony was not entirely credible**.

The ALJ found that the Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible because the Plaintiff's symptoms were out of proportion to the clinical findings, and that Plaintiff's testimony was "vague and global, evading specific answers or giving unresponsive answers." (Tr. at 20, 23).  This court finds that the ALJ properly evaluated Plaintiff's testimony.

Plaintiff testified that she could not work because she had pain and swelling in her hands. (Tr. at 406-7).  She testified that her condition was not improved following hand surgery, but acknowledged that her hand surgeon, Dr. Aghan, had said she had marked improvement and could return to work four weeks after the surgery.(Tr. at 419).  Plaintiff testified she did not return to Dr. Aghan after this assessment. (Tr. at 419).

Plaintiff also testified that her daily activities are limited, and her daughters help her with housework and cooking. (Tr. at 409).  When asked if she drove, the Plaintiff first responded that her children drive her, and then said that she drove, "here and there if I have to." (Tr. at 417).  She also testified that she could lift 5-10 pounds. (Tr. at 409).

Plaintiff stated that she had been working with VESID counselors, but they told her they could not help her because of

her condition. (Tr. at 412). However, the record indicates that the Plaintiff's case was initially closed at VESID because she failed to make appointments, and later because the VESID counselor, without performing any tests, shared her impressions that she could not work because she could not see herself engaging in work activities on a regular basis. (Tr. at 284, 376, 416). The Plaintiff later testified that she did not keep her VESID appointments. (Tr. at 416).

This Plaintiff's testimony was inconsistent with the clinical findings in the record and the Plaintiff's statements about her symptoms and daily activities were broad and vague at times. This Court finds that the ALJ properly concluded that her testimony was not entirely credible.

## **CONCLUSION**

For the reasons set forth above, this Court finds that the Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record. Therefore, I grant the Commissioner's motion for judgment on the pleadings. The Plaintiff's motion is denied and the complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca<br>
MICHAEL A. TELESCA<br>
United States District Judge

Dated:   Rochester, New York
         March 5, 2009